DREW, J.
11 Asserting that a vehicular collision involving a city bus never occurred, City of Shreveport (“Shreveport”) and the bus driver appeal a judgment awarding damages to plaintiff for injuries sustained by his minor son in the collision. We affirm.
FACTS
At approximately 11:30 on the morning of March 1, 2003, Pamela Cantley was returning from breakfast at a restaurant. Passengers in her Pontiac Grand Prix were her mother, 77~year-old Hazel Johnson, and Cantley’s 14-year-old nephew, Blake Johnson. Mrs. Johnson was a passenger in the front. Blake Johnson was sitting behind his aunt.
The car stopped at a red light at the intersection of 70th Street and Buncombe *1214 Road. Behind the car was a SporTran bus driven by Inez Wiggins. The occupants of the car testified that the bus struck the rear of the car while it was stopped at the light. They felt an impact, and when they turned around, they saw the bus. Wiggins and a bus passenger, Shatina Robinson, testified that there was never any contact between the bus and the car.
Cantley described to the trial court what immediately preceded the accident:
I was sitting there and I looked out my side mirrors, looked out my rearview mirror. I know when I looked out my rearview mirror I thought to myself something like a word I shouldn’t use. But “That bus is close or that bus is fast or something.” Then I looked straight ahead and that’s when it hit the back of my car.
Cantley exited the car in order to check its condition, but did not see any damage to her car. The front of the bus and rear of the car were about Rthree or four feet apart at the time. Cantley thought a rubber bumper on the bus had hit her car’s bumper. Cantley recalled that when she looked at the bus driver, the driver “kind of put her hand over her mouth like people go opps (sic).” Cantley then waved at the driver and said it was okay.
Cantley returned to her car and decided not to call the police at that time because there was no damage to her car, she was unaware of any injuries, and she did not want to get the bus driver in trouble. Cantley then drove her mother and nephew to Mrs. Johnson’s home, where Blake also lived with his family. This took about five to ten minutes.
Blake asserted that because he was not wearing a seatbelt, the impact caused him to be knocked forward, hitting his head on the seat in front of him, then backwards, hitting his head on the back of his seat. Blake did not feel any pain immediately after the impact, but his neck began hurting about halfway home, and by the time he reached home, his neck continued hurting and he had a headache. He complained to his father about the pain in his head and neck, and he was taken to a First Care Clinic approximately three hours later.
Either Cantley or Blake’s father, William Johnson, called the police at approximately 3:30 that afternoon to report the accident. Sgt. Reginald Fields, who worked for both the Shreveport Police Department (“SPD”) and SportTran, notified SPD officer Antoine White at about 3:40 p.m. It was Officer White’s understanding that the bus driver had contacted Sgt. Fields; however, Sgt. Fields stated that he learned of the incident when someone called dispatch to report an accident. Officer White testified that Cantley 13told him that although she did not observe any damage to her vehicle at the accident scene and did not feel an accident report had been warranted at that time, she then wanted to document the incident because her nephew had injuries.
Blake was treated by Dr. James May, a family medicine physician, on March 4, 2003. Dr. May found evidence of muscle spasm and pain, which he considered to be a typical injury that he would see from a car wreck. Dr. Mark Guice, a chiropractor, first treated Blake on March 5, 2003. Dr. Guice’s diagnosis was a grade two whiplash with motor and sensory loss.
On August 25, 2003, William Johnson filed suit on Blake’s behalf against Shreveport d/b/a SporTran and Wiggins. Following trial on the merits, the trial court rendered judgment awarding $19,147.94, which included $15,000 in general damages. Shreveport and Wiggins appeal.
DISCUSSION
A court of appeal may not set aside a trial court’s finding of fact in the absence *1215 of “manifest error” or unless it is “clearly' wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a factfinder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
A reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether |4the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, supra. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands greatdeference to the trier of fact’s findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, supra.
The occupants of the vehicle were consistent in their descriptions of what- happened. Mrs. Johnson- described- the impact as a “big boom from behind” and a “severe jolt.” Cantley testified she felt a “jolt” and the impact threw her forward enough that her -seatbelt caught. Blake testified that he felt a “big jolt” from behind, and because he was not wearing a seatbelt, the • impact threw him forward and then backward.
Mrs. Johnson could not recall the car moving forward from the impact. Cantley did not think the impact moved her car because she had her foot on the brake. Cantley, who estimated the distance between’ the two |Bvehicles as three to four feet when she exited her car, did not see the bus move backwards after the accident. When questionéd about the car moving from the impact, Blake stated that the only thing he felt move was himself.
When Dr. Guice took Blake’s history on his first visit, Dr. Guice wrote that Blake was a passenger in the front seat, and it was Dr. Guice’s understanding that Blake’s hands hit the dashboard. Dr. Guice testified that he thought there were only two people in the car, so he assumed Blake was the passenger, and if he was a passenger, then he sat in the front seat, and if he was in the front seat, he would have hit the dashboard when he braced for impact. Blake never mentioned to Dr. Guice that his head hit the seat in front of him, then hit the seat behind him. Dr. Guice admitted that he did not write everything down verbatim. Blake denied that he told Dr. Guice that he was a front seat passenger. Blake told Dr. May on March 4, 2003, that he was sitting in the back seat.
Dr. Guice stated that his opinion on causation would not change if he misunderstood where Blake was sitting in the car or whether or not Blake wore a seatbelt. He explained that is because the forces of the impact are going to act equally on all the vehicle occupants. Thus, it would not matter whether Blake was a passenger in the front or the back of the car.
*1216 Officer White conducted the investigation, and Sgt. Fields took photographs of the car. Neither one saw any damage to the car. The only person interviewed at Mrs. Johnson’s home was Cantley. Sgt. Fields thought that Cantley seemed unsure about whether or not there had been a IfiCollision. No damage to the car was visible. The bus was not inspected by either law officer. No citation was issued to either driver.
Officer White testified that he had never seen a vehicle the size of a city bus hit a passenger vehicle and there not be any damage to the passenger vehicle. Sgt. Fields said he had never investigated an accident involving a bus rear-ending a passenger vehicle where there was no physical damage to the passenger vehicle.
Officer White spoke with Wiggins over the phone. She related to him that the car had pulled into the intersection, then began backing up toward the bus, but stopped before the bus and car made contact. Wiggins testified that the car stopped in the intersection as the light turned red, and then began backing up, but no contact was made between the vehicles. Robinson did not recall seeing the car back up toward the bus. Both Mrs. Johnson and Cantley denied that the car stopped in the intersection.
Dr. Guice explained that a lateral cervical x-ray of Blake’s neck taken on the date of the accident showed loss of the cervical curve, indicating a stretching or tearing of the ligament, which occurs when there has been acceleration-deceleration of the cervical spine. Dr. Guice added that if Blake was older, some of the degeneration of his cervical spine could be attributed to wear and tear, but that does not happen with a 15 year old. Dr. Guice conceded that it is possible for a whiplash injury to occur just by a vehicle stopping quickly, so he could not rule that out in this matter. Dr. Guice’s opinion concerning the bus accident being the cause of Blake’s [7condition was based upon Blake’s history of having been involved in an accident shortly before the examination.
Shreveport and Wiggins argue on appeal that the failure to present physical evidence of contact between the vehicles means the plaintiff failed to carry his burden proof. In support of their argument, appellants rely on a Fourth Circuit case, Williams v. Bulk Transport, Inc., 266 So.2d 472 (La.App. 4th Cir.1972). The court stated:
Additionally where the significant testimony tendered by the parties is conflicting and irreconcilable and the court has no reason to suspect the credibility of the witnesses, then resort must be had to the physical aspects in determining a preponderance of evidence. Should there be no attendant significant physical evidence, then the court must find that the proponent has failed to bear the burden of proof sufficient to constitute a preponderance of evidence.
Id., 266 So.2d at 474. See also Miller v. Lowry, 409 So.2d 1252 (La.App. 2d Cir.1982).
However, that situation is not applicable in this case as the trial court clearly stated at the conclusion of testimony that he was questioning the credibility of three of defendant’s witnesses:
To say that there is a divergence of the testimony is to put it mildly. I will also note that Ms. Johnson, the grandmother of Blake, I don’t recall any divergence in her testimony or any impeachment in her testimony. In other words, any pri- or inconsistent statements that she made. That’s not the case with Sergeant Fields, that’s not the case with Ms. Robinson, and that’s not the case with Ms. Wiggins.
*1217 Sgt. Fields testified at trial that when he spoke with Wiggins on the date, of the accident, she told him that the car had backed up. However, Sgt. Fields did not mention this during his deposition- when recounting what ^Wiggins had told -him. Sgt. Fields worked at SporTran in addition to his job as an SPD officer.
Wiggins testified that she saw three young men in the back seat of the car, and there were a total of five people in the car.' According to Wiggins, a blonde-haired Blake was seated in the middle of the back seat. Mr. Johnson testified that Blake’s hair was brown at the time of the accident and had been recently dyed blonde at the time of the trial.
Robinson, who was seated across from Wiggins on the bus and claimed she did not see or feel the bus touch the car, also believed that there were five occupants in the car, with three people sitting in the back. Robinson admitted that she had gone to Wiggins’ church to sing a few times before the accident. Robinson, denied at trial that Wiggins had driven her to her deposition; however, Wiggins testified that she had driven Robinson in her car to the deposition.
Based on the foregoing, we cannot conclude that the trial court was clearly wrong in finding the car was struck by the bus and that defendants are liable- for the injuries sustained in the accident.
Shreveport and Wiggins next contend that the trial court erred in rendering its decision without considering depositions that were filed concurrently with their post-trial brief. In support of its argument, Shreveport and Wiggins cite La. R.S. 13:4207, which provides:
The district judges and the judges of the city courts, shall render judgments in all - cases taken under advisement by them, within thirty days from the time the cases are submitted for their decision. All motions or applications for a new trial shall be passed, upon by these judges within seven days from the time such motions, or applications for a new trial are submitted |9to them for their decision; but by the written consent of the attorneys representing both sides, filed in the records or spread upon the minutes, the time herein granted may be extended for a further period of ten days, but no longer.
This statute is inapplicable to this issue as it merely, addresses, the time period in which the trial court is to render judgments and act upon motions or application for new trial. Nothing in the record indicates that the trial court kept the record open for the introduction of additional evidence. As such, this assignment of error lacks merit.
CONCLUSION
With appellants to pay the appeal costs of $118.50, the judgment is AFFIRMED.